**The GRIGOLEIT COMPANY,**
**Plaintiff-Appellant,**

v.

**UNITED RUBBER, CORK, LINOLEUM AND PLASTIC WORKERS OF AMERICA, LOCAL NO. 270, Defendant-Appellee.**

No. 84–2980.

United States Court of Appeals, Seventh Circuit.

Argued April 9, 1985.

Decided July 31, 1985.

Gary B. Pasek, Greanis & Booth, Decatur, Ill., for plaintiff-appellant.

Ann C. Hodges, Katz, Friedman, Schur & Eagle, Chicago, Ill., for defendant-appellee.

Before WOOD and FLAUM, Circuit Judges, and PELL, Senior Circuit Judge.

PELL, Senior Circuit Judge.

The issue presented on appeal in this case is whether the arbitrator exceeded his authority by determining that plaintiff-appellant, the Grigoleit Company, violated its collective bargaining agreement by refusing to recall from layoff an employee, Sharon Marsh. Specifically, the arbitrator found that plaintiff acted arbitrarily in refusing to recall Marsh allegedly because she was unqualified, for health reasons, to perform her job. After the arbitrator entered his opinion and award, plaintiff filed a complaint in the district court seeking to vacate the award. Defendant-appellee, United Rubber, Cork, Linoleum and Plastic Workers of America, Local No. 270, filed a counterclaim and a motion for summary judgment seeking to enforce the award. The district court granted defendant's motion for summary judgment, and plaintiff appeals.

## I. The Facts

Sharon Marsh, one of plaintiff's employees, suffered a work-related back injury in February or March of 1980. Over the next few weeks, plaintiff's company doctor examined Marsh at least three times, and Marsh consulted at least two other doctors regarding her back problems. In May 1980, plaintiff laid off Marsh. Plaintiff recalled Marsh in October 1980, and Marsh worked without incident until November 1980, when she was laid off again.[1] On July 26, 1983, plaintiff rehired another employee, who possessed less seniority than Marsh, to a position for which Marsh was qualified.

On August 3, 1983, Marsh filed a grievance with the union protesting plaintiff's failure to recall her to the position that was filled on July 26, 1983. Plaintiff then required Marsh to undergo a physical examination. On August 10, 1983, Dr. Huss examined Marsh, and he concluded that she might "redevelop a strain ... which most likely would be aggravated by repetitive twisting, bending, lifting, pushing and pulling." On August 16, 1983, plaintiff made an entry on the grievance form, stating,

---

1. In 1981, after settling a worker's compensation claim with Marsh, the Company's personnel director wrote a confidential note to his file stating that she was "physically incompatible with work available or likely to become available." He questioned whether there was enough medical data to support the position but wrote that "it might be best to let sleeping dogs lie."

"We are awaiting the evaluation and recommendations of Drs. Huss and Fiscus. The Company's decision will depend upon the doctors' findings, the nature of available work and the degree of risk to the individual." After receiving only the results of Dr. Huss' examination, plaintiff denied the grievance on August 23, 1983, stating on the grievance form: "It is plain that our duty to Sharon's safety precludes placing her in work which the doctor finds likely to do her harm."

Section 5.1 of the collective bargaining agreement then in effect between plaintiff and the union provided: "Seniority shall be the determining factor in matters affecting layoff from and recall to work." In addition, section 12.4 of the agreement provided: "The management of the plant and the direction of the working force, including . . . the right to determine qualifications, is vested exclusively in the Company, provided that this will not be used for the purpose of discrimination against members of the Union." Article 4, which committed to arbitration disputes regarding the application and interpretation of the collective bargaining agreement, provided:

> The arbitrator may interpret this Agreement and apply it to the particular case presented to him or her, but he or she shall, however, have no authority to add to, subtract from, or in any way modify the terms of this Agreement. The arbitrator shall not abridge management's rights or determinations unless management has acted arbitrarily or for the purpose of discrimination against members of the Union.

In resolving the merits of the dispute presented to him, the arbitrator considered, among other things, the terms of the collective bargaining agreement, the August 1983 report of Dr. Huss, the deposition testimony of Dr. Huss, various medical reports made in 1980, and Marsh's employment history with plaintiff. On the basis of this evidence, the arbitrator concluded that plaintiff acted arbitrarily both when it refused to recall Marsh on July 26, 1983, when another employee was recalled to a

position for which Marsh was qualified, and also on August 23, 1983, when, allegedly on the basis of Dr. Huss' report, plaintiff denied the grievance. Further, the arbitrator determined that plaintiff had decided long before July 26, 1983, never to recall Marsh and to allow her seniority rights to expire.

In the arbitrator's opinion, he reasoned that plaintiff acted arbitrarily by refusing to give weight to, among other things, Marsh's 1980 medical reports, her employment history with plaintiff, and her health history since 1980, and by relying solely on Dr. Huss' August 1983 report to justify its failure to recall Marsh. Plaintiff had argued that the 1980 reports were stale and that, therefore, it was entitled to ignore those reports in determining whether to recall Marsh in 1983. The arbitrator determined that, even if plaintiff believed that the 1980 reports were stale, it still acted arbitrarily because it decided to bypass Marsh for recall on July 26, 1983, when it lacked any new non-stale reports. For these reasons, the arbitrator concluded that plaintiff violated the agreement by failing to recall Marsh, and he awarded Marsh back pay from the date on which she should have been recalled, July 26, 1983, until the date on which she is reinstated.

The arbitrator entered his opinion and award on December 16, 1983. On March 16, 1984, plaintiff filed suit in the district court seeking to vacate the arbitration award, alleging that the arbitrator had exceeded his contractual authority. In response, defendant union filed an answer and a counterclaim seeking enforcement of the arbitration award. On July 2, 1984, defendant moved for summary judgment to enforce the arbitration award, which motion was granted on September 5, 1984. Plaintiff then moved to reconsider and vacate the summary judgment order. On October 23, 1984, the court denied plaintiff's motion to reconsider, and plaintiff appealed to this court.

Plaintiff raises four issues on appeal. First, plaintiff contends that the district court should not have granted summary judgment because it did not give plaintiff

ten days' notice that it was taking the motion under advisement. According to plaintiff, rule 56(c) of the Federal Rules of Civil Procedure requires such notice. Second, plaintiff contends that summary judgment should not have been granted because defendant did not prove the absence of any genuine issue of material fact. Third, plaintiff claims that the district court erred in determining that the arbitrator had not exceeded his contractual authority. Finally, plaintiff argues that, even if the arbitrator decided correctly that plaintiff breached the collective bargaining agreement, he had no remedial authority to order reinstatement and award back pay.

## II. Notice Requirement
## Under Rule 56(c)

Plaintiff's first challenge to the district court's grant of summary judgment is that the court failed to comply with the notice requirements of rule 56(c) of the Federal Rules of Civil Procedure. Specifically, plaintiff contends that the court failed to give the requisite ten-day notice that it was taking defendant's motion for summary judgment under advisement.

▆▆▆ The relevant portion of rule 56(c) provides: "The motion shall be served at least 10 days before the time fixed for the hearing." As this court has noted, the type of hearing required under rule 56(c) need not include oral argument. *Sarelas v. Porikos*, 320 F.2d 827, 828 (7th Cir.1963), *cert. denied*, 375 U.S. 985, 84 S.Ct. 519, 11 L.Ed.2d 473 (1964). *See Brown-Bey v. United States*, 720 F.2d 467, 470 (7th Cir. 1983). Rule 56(c) requires that, prior to ruling on a summary judgment motion, a court accord "the opposing party a reasonable opportunity to submit affidavits that contradict the affidavits submitted in support of the motion and demonstrate that there is a genuine issue of material fact which precludes granting the defendants summary judgment." *Lewis v. Faulkner,*

689 F.2d 100, 101 (7th Cir.1982). *See Gieringer v. Silverman*, 731 F.2d 1272, 1280 (7th Cir.1984). Unless the district court alters the period by pretrial order, it must allow the opposing party at least ten days in which to respond to the motion before acting on ten *Indiana Port Commission v. Bethlehem Steel Corp.*, 702 F.2d 107, 111 (7th Cir.1983). *See Allen v. Beneficial Finance Co.*, 531 F.2d 797, 799 (7th Cir.1976), *cert. denied*, 429 U.S. 885, 97 S.Ct. 237, 50 L.Ed.2d 166; *Ikerd v. Lapworth*, 435 F.2d 197, 203 (7th Cir.1970) (summary judgment affirmed where district court granted motion nine days after filing and appellant did not demonstrate any prejudice that he suffered due to the court's oversight).

Plaintiff interprets rule 56(c) to require the court to notify the opposing party ten days before disposing of the motion, irrespective of the date on which the motion was filed. In other words, plaintiff would construe the rule to require a court to notify the opposing party ten days before ruling on the motion, even if the motion were filed six months earlier. Plaintiff cites *Capital Films Corp. v. Charles Fries Productions, Inc.*, 628 F.2d 387 (5th Cir. 1980), in support of this position. In *Capital Films*, unlike this case, the court indicated to the parties that it would not act on the summary judgment motion and that the case would proceed to trial. *Id.* at 391. In that case, the Fifth Circuit held that, because the court had induced appellant into believing that it would not rule on the motion, the court should have given appellant ten days' notice before acting on it. *Id.*

▆▆▆ In this case, the district court did not improperly grant defendant's motion for summary judgment. Defendant filed its motion for summary judgment on July 2, 1984, and the court granted the motion on August 21, 1984, entering judgment on September 6, 1984.[2] Because almost two

---

**2.** In its order granting defendant's motion for summary judgment, the court noted that "plaintiff failed to respond to such motion within the time permitted by Local Rule 12 of the Rules of the United States District Court for the Central

District of Illinois." According to Local Rule 12(b), "any party opposing the motion shall file a brief statement of reasons and authorities in opposition to the motion within 5 days after the service of the motion (8 days if served by mail)

months passed between the date on which the motion was filed and the date on which the motion was granted, plaintiff possessed ample opportunity to respond to the motion or, at the very least, to request an extension of time in which to respond. For some unexplained reason, plaintiff never filed any response to defendant's motion for summary judgment. Even now, it does not allege any prejudice arising out of the court's resolution of defendant's motion without explicit notice to plaintiff nearly two months after the motion was filed. In this case, because plaintiff had almost two months in which to file a response, and because plaintiff does not claim that it did not receive notice of defendant's motion for summary judgment, this court holds that the district court complied with rule 56(c) when it granted defendant's summary judgment motion.

### III. The Arbitrator's Award

■ Plaintiff contends that the district court should not have granted summary judgment in this case because defendant failed to demonstrate the absence of a genuine issue of material fact. In particular, plaintiff argues that the affidavit of Janice Munyon, stating that plaintiff had not complied with the arbitrator's award ordering Marsh reinstated with back pay, provided the only factual support for defendant's summary judgment motion. The facts alleged in the affidavit accompanying defendant's motion for summary judgment, plaintiff contends, do not address the issue presented to the district court—whether the arbitrator exceeded his contractual authority. According to plaintiff, because defendant put forward no evidence on the issue of the arbitrator's authority under the collective bargaining agreement, the court should not have granted defendant's motion for summary judgment.

unless the time is extended by the court on good cause shown." Because plaintiff did not raise the contention on appeal, this court declines to decide whether Local Rule 12(b) is inconsistent with rule 56(c) of the Federal Rules of Civil Procedure. Moreover, this court notes that,

■ With respect to the evidence that a court may consider in ruling on a motion for summary judgment, rule 56(c) states: "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The pleadings before the court at the time it ruled on defendant's motion for summary judgment included the collective bargaining agreement and the arbitrator's opinion and back pay award. This court finds that the district court, on the basis of this evidence, properly could determine whether the arbitrator's award "[drew] its essence from the collective bargaining agreement." *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). In addition, we note that courts frequently have resolved on motions for summary judgment the question whether an arbitrator exceeded his authority. *See, e.g., Miller Brewing Co. v. Brewery Workers Local Union No. 9*, 739 F.2d 1159 (7th Cir. 1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 912, 83 L.Ed.2d 926 (1985); *F.W. Woolworth Co. v. Miscellaneous Warehousemen's Union, Local No. 781*, 629 F.2d 1204 (7th Cir.1980), *cert. denied*, 451 U.S. 937, 101 S.Ct. 2016, 68 L.Ed.2d 324 (1981).

■ This court has emphasized repeatedly that the court's role in reviewing an arbitrator's award is extremely limited. *Ethyl Corp. v. United Steelworkers*, 768 F.2d 180, 183 (7th Cir.1985). *F.W. Woolworth Co.*, 629 F.2d at 1214; *Amoco Oil Co. v. Oil, Chemical and Atomic Workers International Union, Local 7–1, Inc.*, 548 F.2d 1288, 1293–94 (7th Cir.1977), *cert. denied*, 431 U.S. 905, 97 S.Ct. 1697, 52 L.Ed.2d 389. In reviewing an arbitrator's award, the

even though the district judge cited rule 12(b) in its order, he satisfied the ten days' notice requirement contained in rule 56(c) because he waited approximately two months before ruling on the motion.

court may determine only "whether the award 'draws its essence from the collective bargaining agreement' and whether 'the arbitrator's words manifest an infidelity to this obligation.'" *Amoco Oil Co.,* 548 F.2d at 1293–94 (quoting *Enterprise Wheel & Car Corp.,* 363 U.S. at 597, 80 S.Ct. at 1361). According to this court, an arbitrator's award should stand if it embodies an attempt by the arbitrator to interpret the collective bargaining agreement and if that interpretation is not irrational. *See Miller Brewing Co.,* 739 F.2d at 1163; *F.W. Woolworth Co.,* 629 F.2d at 1216. The court should not reverse an arbitrator's award simply because the court might have decided differently the merits of the dispute. *W.R. Grace & Co. v. Local Union 759, International Union of the United Rubber Workers,* 461 U.S. 757, 764, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983); *F.W. Woolworth Co.,* 629 F.2d at 1216.

In this case, the arbitrator interpreted the collective bargaining agreement to allow him to set aside plaintiff's decision that Marsh was unqualified for recall only if he determined that plaintiff acted arbitrarily in making that decision. Construing his authority in this manner, the arbitrator concluded that "the Employer violated the seniority rights of the grievant when it concluded on July 26, 1983 and again on August 23, 1983 not to recall the grievant to work." In accordance with our limited standard of review, this court must determine whether the arbitrator interpreted the terms of the collective bargaining agreement and applied them in an irrational manner to the facts underlying the grievance in reaching his conclusion that plaintiff had acted arbitrarily.

In considering whether plaintiff's failure to recall Marsh was arbitrary, the arbitrator reviewed plaintiff's decision not to recall Marsh on the basis of all the information available to plaintiff on August 23, 1983, the date when plaintiff denied the grievance. On this date, plaintiff possessed a vast array of information concerning Marsh's ability to perform her job. The information included, in addition to Dr. Huss' August 10th report,

Marsh's history of working until November 12, 1980 without lost time, the reports of Drs. Fiscus, Noonan and Schrodt [the doctors whom she consulted in 1980], the fact that the company permitted her to work in the spring and fall of 1980 with knowledge of her back pain and its origin, her ability to do house and yard work for over 2–½ years, her freedom from medical care and medicines during that period, etc.

Plaintiff claimed that it decided not to recall Marsh based on the medical reports on file as of July 26, 1983. The only reports on file as of that date, the arbitrator found, indicated that Marsh was qualified to continue working in her position. In fact, as of July 26, 1983, Dr. Huss had not examined Marsh or filed his report with plaintiff.

Plaintiff advanced another argument to establish that its failure to recall Marsh was not arbitrary. Plaintiff contended that it based its decision solely on Dr. Huss' report because the 1980 reports were stale. First, the arbitrator concluded that plaintiff should not have relied solely on Dr. Huss' report because, among other things, Dr. Huss had no knowledge of the type of work in which Marsh engaged while working at the company, and he made no attempt to determine whether Marsh's condition had worsened since 1980, when Dr. Fiscus, the company doctor, concluded that Marsh was qualified to perform her job. More importantly, the arbitrator concluded that if plaintiff actually had believed that the 1980 reports were stale, then its decision to bypass Marsh on July 26th was arbitrary because plaintiff made that decision without any medical reports whatsoever concerning plaintiff's condition.

Plaintiff argues on appeal that once the arbitrator determined that plaintiff proffered Dr. Huss' report as the reason for its failure to recall Marsh, the arbitrator's inquiry should have ended. Under plaintiff's interpretation of the collective bargaining agreement, the arbitrator was not permitted to "inquire into the soundness or pro-

priety of [plaintiff's] decision." Contrary to plaintiff's interpretation, the arbitrator interpreted his task of reviewing plaintiff's decision under a standard of arbitrariness to encompass a more thorough inquiry than simply whether plaintiff has proffered an alleged justification for its decision. As a result of his examination of the record, the arbitrator found that plaintiff had decided long before July 26, 1983, that it would not recall Marsh and that it would allow her seniority rights to expire, which would have occurred on September 15, 1983. Under these circumstances, this court cannot agree with plaintiff that the arbitrator exceeded his authority by determining that plaintiff's proffered reason for bypassing Marsh was a pretext designed to hide an arbitrary decision made before July 26, 1983.

■ This court finds that the arbitrator did not interpret the collective bargaining agreement in an irrational manner. The arbitrator construed the terms of the agreement to permit him to set aside plaintiff's decision to bypass Marsh only if he found that the decision was arbitrary. For the reasons previously discussed, the arbitrator determined that plaintiff's refusal to recall Marsh was arbitrary. Thus, this court finds that the arbitrator's award drew its essence from the collective bargaining agreement. Once a court finds that the award draws its essence from the collective bargaining agreement, the court cannot review the merits of the dispute and must enforce the award. *W.R. Grace & Co.*, 461 U.S. at 764, 103 S.Ct. at 2182 (award enforced even though reasons that arbitrator gave for decision were ambiguous). Accordingly, this court declines to reverse the district court's grant of summary judgment enforcing the arbitration award.

### IV. The Arbitrator's Remedy

■ Plaintiff's final argument concerns the propriety of the remedy that the arbitrator ordered. Upon finding that plaintiff had acted arbitrarily and had violated Marsh's seniority rights, the arbitrator ordered plaintiff to award Marsh back pay and benefits from July 26, 1983, the date on which she should have been recalled, until the date on which she is reinstated. Plaintiff challenges the arbitrator's authority to fashion this remedy, arguing that the only remedy available to the arbitrator was to remand the dispute to the parties for a further determination of qualification. In support of its contention, plaintiff relies on the second sentence of section 4.2 of the collective bargaining agreement, which states, "The arbitrator shall not abridge management's rights or determinations unless management acted arbitrarily or for the purpose of discrimination against members of the Union." According to plaintiff, under this provision, the arbitrator may only *abridge* management's determinations and may not *reverse* them.

Even if the parties intended this provision to address the arbitrator's authority to fashion an award, a conclusion that this court declines to make, the meaning of the word abridge is ambiguous. "Abridge," as plaintiff concedes, means to "diminish." Under section 4.2, an arbitrator may abridge or diminish a management determination if the arbitrator concludes that that determination was arbitrary.

This court agrees with the arbitrator that his authority to abridge a management determination encompasses the right to order reinstatement and that any other interpretation of his remedial authority would contravene the first sentence of section 4.2, which prohibits the arbitrator from modifying the terms of the agreement. According to the arbitrator, if plaintiff violated Marsh's contractual seniority rights,

> then the remedy must be fashioned to recognize her *contract* right to recall on July 26, 1983. Any other remedy would be a plain alteration of or addition to the Agreement in open violation of that Agreement's seniority provision and contractual limitations upon the arbitrators' jurisdiction and powers.

The arbitrator recognized that the only effective remedy to redress plaintiff's violation of Marsh's seniority rights, and to

abridge plaintiff's arbitrary decision, was to order plaintiff to reinstate Marsh with back pay. In numerous cases, this court has acknowledged that an arbitrator possesses wide latitude to fashion an appropriate remedy. *See, e.g., International Union of Operating Engineers, Local Union No. 139 v. Carl A. Morse, Inc.,* 529 F.2d 574, 580 (7th Cir.1976); *United Electrical Radio and Machine Workers v. Honeywell Inc.,* 522 F.2d 1221, 1226 (7th Cir.1975). Thus, because this court finds that the word "abridge" does not limit the arbitrator's remedial authority, this court affirms the arbitrator's award of reinstatement with back pay.

## V. Conclusion

For the foregoing reasons, this court AFFIRMS the district court's grant of defendant's motion for summary judgment enforcing the arbitration award.