827 F.2d 317
 Carol DAVIS, Appellant,
v.
CITY OF CHARLESTON, MISSOURI; Kim Smith, Individually and
as a Police Officer of the City of Charleston, Missouri;
Sgt. Claude Grant, Individually and as a Police Officer of
the City of Charleston, Missouri; and Edward C. Graham, Appellees.
Carol DAVIS, Appellant,
v.
CITY OF CHARLESTON, MISSOURI; Kim Smith, Individually and
as a Police Officer of the City of Charleston, Missouri;
Sgt. Claude Grant, Individually and as a Police Officer of
the City of Charleston, Missouri; and Edward C. Graham, Appellees.
 Nos. 86-1653, 86-2592.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 12, 1987.
Decided Aug. 25, 1987.
Rehearing and Rehearing En Banc Denied Oct. 12, 1987.
 
 Eric E. Vickers, St. Louis, Mo., for appellant.
 Henry Herschel, Asst. Atty. Gen., Jefferson City, Mo., and John L. Oliver, Jr., Cape Girardeau, Mo., for appellees.
 Before ROSS, Circuit Judge, BRIGHT, Senior Circuit Judge, and MAGILL, Circuit Judge.
 BRIGHT, Senior Circuit Judge.
 
 
 1
 These consolidated appeals arise out of Carol Davis' arrest and conviction for peace disturbance in Missouri state court. Two Charleston, Missouri, police officers, Kim Smith and Claude Grant, arrested Davis when she allegedly interfered with their attempts to break up a street fight between Davis' niece and another teenager. Missouri Associate Circuit Court Judge Edward Graham found Davis guilty of the peace disturbance charge and, upon Davis' refusal to pay a $200.00 fine for her conviction, sentenced her to a two-week term of imprisonment.
 
 
 2
 Thereafter, Davis filed this section 1983 civil rights action, naming as defendants Officers Smith and Grant, the City of Charleston and Judge Graham. In her complaint, Davis alleged that her constitutional rights had been violated by the fact of and manner of her arrest and by her imprisonment.
 
 
 3
 The district court granted the Officers' motion for summary judgment upon Davis' failure to appear at trial, and granted Davis' motion for partial summary judgment against Judge Graham for imprisoning Davis upon nonpayment of her fine without first holding a hearing on her claimed indigency.[1] The district court awarded the Officers $4,591.56 and Davis $460.00 in attorney's fees in the two actions.
 
 
 4
 On the appeal, Davis contends that the district court erred in (1) granting the Officers' second motion for summary judgment; (2) awarding the Officers attorney's fees; and (3) refusing to grant her attorney's fees in the amount she requested.
 
 
 5
 We affirm the district court's grant of summary judgment, but remand for reconsideration by the district court the issues of whether the Officers were properly awarded attorney's fees and the appropriate amount of Davis' attorney's fees in her action against Judge Graham.
 
 I. BACKGROUND
 
 6
 On October 4, 1984, Carol Davis was driving to the National Guard Armory in Charleston, Missouri, to register new voters when she spied her teenage niece on a street corner battling another teenager with a stick. It seems the other teenager had started the fight, but Davis' niece had gained the upperhand. By the time Davis approached the two girls, Officer Claude Grant of the Charleston Police Department, dressed in plain clothes, had stepped in to break up the fight. When Officer Kim Smith, also of the Charleston Police Department, stopped at the corner in his patrol car, he and Grant proceeded to place Davis' niece in the patrol car.
 
 
 7
 At her state court trial for disturbing the peace, Carol Davis claimed that when the Officers placed her niece in the patrol car, she requested to accompany her to the police department, as the girl's mother would need to be notified. She claimed that not only was her request denied, but Officer Grant told Officer Smith, "If she gets her ass in the car, arrest her." Davis claimed that as soon as she climbed into the patrol car, Officer Smith did indeed arrest her.
 
 
 8
 According to Officers Smith and Grant's testimony at the same trial, as Officer Grant was attempting to place Davis' niece in the car, Davis kept pulling her niece back, screaming and hollering, and grabbing Officer Grant's shirt in an effort to restrain him. Officer Smith testified that he was forced to pin Davis against the car so that Officer Grant could place Davis' niece in the car. When Davis refused to stay out of the Officers' way, she was arrested, and Officer Smith took her hand and assisted her into the car.
 
 
 9
 Davis was not represented by counsel at her state court trial on October 25, 1984, but requested that the presiding judge appoint counsel for her. After receiving the Prosecuting Attorney's opinion that a guilty verdict on the peace disturbance charge would not demand a jail sentence, the state judge denied Davis' request. Following presentation of testimony, the court found Davis guilty of the peace disturbance charge and fined her $200.00, plus costs of $50.50.
 
 
 10
 The court informed Davis that she had until November 26, 1984 to pay the fine and costs or to show cause why she should not be imprisoned for nonpayment. On November 26, 1984, Davis called the court clerk to say that she could not pay the amount and was ready to go to jail. The court then issued a Warrant of Commitment under Mo.Ann.Stat. Sec. 560.031 (Vernon 1979), ordering Davis to spend fourteen days in jail for nonpayment of the fine and costs. As a result of Davis' work in the prison kitchen, she was released after seven days confinement.
 
 
 11
 In her complaint against the City of Charleston and Officers Grant and Smith (as augmented by her Supplemental Answer to Interrogatories), Davis alleged that the Officers (1) unlawfully arrested her (or arrested her without probable cause); (2) took her into custody without informing her of her Miranda rights, including her sixth amendment right to counsel; (3) used excessive force against her during the arrest; (4) misrepresented under oath at her state court trial the facts giving rise to her arrest. Against the City, Davis alleged that the Officers' actions were part of a pattern, practice, and custom by the Charleston Police Department of using excessive force against Charleston residents and depriving them of their constitutional rights. Davis requested $100,000 in actual damages, plus $150,000 in punitive damages for this conduct. Finally, Davis alleged that Judge Graham violated her constitutional rights in imprisoning her for nonpayment of a fine without a hearing.
 
 
 12
 For a full understanding of the parties' positions on appeal, some review of the proceedings before the district court is necessary. We first address the proceedings of Davis' suit against Officers Smith and Grant. On August 8, 1985, the Officers and the City of Charleston filed their first joint memorandum for summary judgment, together with affidavits from Officer Grant, the Police Chief and the City Manager, and the transcript of Davis' state court trial. The defendants' filed Officer Smith's affidavit on August 30, 1985. On October 17, 1985, the district court denied the motion, based in part upon Davis' claimed need for additional time for discovery. The trial was set for March 10, 1986, but prior to that date Officers Smith and Grant and the City filed their second motion for summary judgment based upon new data submitted by Davis, and the district court ordered the trial date reset. On March 28, 1986, the district court granted the City's second motion for summary judgment, but did not rule on the Officers' motion at that time, or at any other time prior to September 30, 1986.
 
 
 13
 After vacating the March 10, 1986 trial date, the court reset the trial date four more times. Due to a scheduling conflict, Davis' counsel requested a continuance of the fifth and final trial date of September 30, 1986 from the district court by telephone. It is not clear whether the district court acted on counsel's request at that time. In any case, on the morning of September 30th, neither Davis nor her counsel appeared. Officers Grant and Smith orally renewed their second motion for summary judgment at that time and the court granted the motion the same day. In a subsequently released memorandum opinion, the court reasoned that, although the case could properly be dismissed for want of prosecution because Davis' alleged constitutional violations upon which she sought to establish her section 1983 claims were neither supported by the facts of her arrest or by the law, summary judgment for the defendants was appropriate. As noted above, the court subsequently awarded the Officers $4,591.56 in attorney's fees and costs.
 
 
 14
 As to Davis' suit against Judge Graham, the court had earlier granted Davis partial summary judgment on March 28, 1986. The court found Judge Graham's failure to conduct a hearing to determine why Davis failed to pay her $200.00 fine, after Davis had raised an inference that poverty was the cause, denied Davis equal protection under the law. As noted above, the court awarded Davis $460.00 in attorney's fees for her success in this action. 635 F.Supp. 197 (E.D.Mo.1986).
 
 II. DISCUSSION
 
 15
 A. The Officers' Second Motion For Summary Judgment
 
 
 16
 Davis first argues that the district court erred in granting Officers Grant and Smith's second motion for summary judgment, as (1) the motion was not filed ten days prior to a hearing on the motion as is required by Rule 56(c) of the Federal Rules of Civil Procedure; and (2) genuine issues of material fact existed to preclude summary judgment. After reviewing the record, we affirm the district court on this issue.
 
 
 17
 Rule 56(c) provides that a motion for summary judgment "shall be served at least 10 days before the time fixed for the hearing." Fed.R.Civ.P. 56(c). This court requires strict adherence to the ten-day notice requirement in order to protect the opposing party's rights to respond to the motion. See Williams v. City of St. Louis, 783 F.2d 114, 116 (8th Cir.1986); Twin City Federal Sav. & Loan Ass'n v. Transamerica Ins. Co., 491 F.2d 1122, 1126 (8th Cir.1974).
 
 
 18
 We believe the defendants complied with Rule 56(c) and thus properly presented the district court with a motion for summary judgment upon which it could rule. The record reveals that the two Officers actually filed their written second motion for summary judgment jointly with the City of Charleston on March 4, 1986, almost six months prior to the September 30, 1986 trial date on which the court considered and granted the motion. The record also demonstrates, contrary to Davis' assertions on appeal, that the district court granted this second motion as to the City of Charleston, but failed altogether to rule on the motion regarding defendants Grant and Smith. Thus, the defendants' oral motion for summary judgment made on the date set for trial merely renewed, or perhaps more accurately called the court's attention to, their second motion for summary judgment filed approximately six months earlier. As a trial court is under no particular deadline to rule upon motions for summary judgment, the defendants' motion did not dissipate between March 4, 1986 and September 30, 1986 for want of a ruling. See, e.g., Grigoleit Co. v. United Rubber, Cork, Linoleum and Plastic Workers of America, Local No. 270, 769 F.2d 434, 437-38 (7th Cir.1985) (court's resolution of defendant's motion for summary judgment without explicit notice to plaintiff nearly two months after motion was filed complies with Rule 56(c) where plaintiff had nearly two months to file a response and plaintiff does not claim it failed to receive notice of defendant's motion); Daniels v. Morris, 746 F.2d 271, 275 (5th Cir.1984) ("Rule 56(c) does not require that a party be given advance notice of a 'date certain' on which a motion for summary judgment is to be decided by the trial court.")[2] Thus, the defendants complied with Rule 56(c) and properly presented the district court with a second motion for summary judgment upon which to rule.
 
 
 19
 Considering the meagerness of the record before it, we are furthermore satisfied that the district court did not err in granting the defendants' second motion for summary judgment. Due to Davis' counsel's failure to appear, the record before the district court did not include trial testimony from Davis.
 
 
 20
 First, although we reject the defendants' assertion that collateral estoppel, by reason of Davis' conviction for peace disturbance, bars Davis' section 1983 claim for unlawful arrest,[3] we must uphold summary judgment on this claim since the only evidence in the record relevant to this issue, Officers Grant and Smith's affidavits, do not support such a claim.
 
 
 21
 Second, Officers Grant and Smith's failure to warn Davis of her rights pursuant to the Supreme Court's decision in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), did not deprive her of her constitutional rights as no statements obtained from Davis during custodial interrogation were used against her during trial. See Hampton v. Gilmore, 60 F.R.D. 71, 81 (E.D.Mo.1973), aff'd, 486 F.2d 1407 (8th Cir.1973).
 
 
 22
 As to Davis' claim that excessive force was used against her during arrest, Davis' statements in the record fail to counter the affidavits of Officers Smith and Grant that they used only reasonable force under the circumstances. See generally Putman v. Gerloff, 639 F.2d 415, 420 (8th Cir.1981); Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.), cert. denied, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973).
 
 
 23
 Finally, Davis' claim that the Officers misrepresented under oath the facts of her arrest must also fail, as the Supreme Court has held that section 1983 does not authorize a convicted criminal to assert a claim for damages against a police officer for giving perjured testimony at his or her criminal trial. See Briscoe v. Lahue, 460 U.S. 325, 342-43, 103 S.Ct. 1108, 1119-20, 75 L.Ed.2d 96 (1983). See also In Re Scott County Master Docket, 618 F.Supp. 1534, 1571 (D.Minn.1985), aff'd in part, rev'd in part sub nom. Myers v. Morris, 810 F.2d 1437 (8th Cir.1987).
 
 B. The Officers' Attorney's Fees Award
 
 24
 As discussed above, the district court awarded the Officers, as "prevailing parties" under 42 U.S.C. Sec. 1988, $4,591.56 in attorney's fees. Davis argues that the defendants were not entitled to attorney's fees under the proper legal standards for awarding such fees in civil rights actions.
 
 
 25
 Under 42 U.S.C. Sec. 1988, a district court may award attorney's fees and expenses in a section 1983 action upon "well-supported findings" that the suit is "frivolous, unfounded, and vexatiously brought and pursued." American Family Life Assur. Co. of Columbus v. Teasdale, 733 F.2d 559, 569 (8th Cir.1984). See also Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978); Obin v. District No. 9 of the Int'l Ass'n of Machinists and Aerospace Workers, 651 F.2d 574, 577 (8th Cir.1981). The district court awarded the defendants' attorney's fees on the basis of Davis' counsel's alleged failure to conduct discovery after August 8, 1985 (though requesting time to do so), as well as his failure to appear in court for trial on September 30, 1986.
 
 
 26
 Considering the circumstances of this case and the standard enunciated in the above authorities, we believe the trial court entered this award without an adequate basis. First, Davis' counsel contends that he continued to conduct discovery up to March 10, 1986, on which date he received the documents he had requested showing that Officers Grant and Smith were terminated by the Charleston Police Department subsequent to the events giving rise to this litigation. Second, it does not appear that Davis' counsel willfully failed to appear on the fifth trial date set, but rather made every effort to obtain a continuance of this trial date, short of appearing before the district court judge to request one personally or filing a written motion. Finally, and of greatest importance, due to the district court's dismissal of the action upon counsel's failure to appear, Davis was not afforded an opportunity to present evidence or legal arguments to support her section 1983 claims. As the Christiansburg, Teasdale and Obin cases demonstrate, however, an attorney's fee award is properly based upon a complete lack of merits in the plaintiff's claims. From the record before us, we are not prepared to say that Davis could not have established a colorable claim to relief under section 1983 had she been given the opportunity to do so before the district court.
 
 
 27
 Thus, we remand this issue to the district court for a redetermination of the defendants' attorney's fees award in light of these considerations and the standard set forth by the Supreme Court in Christiansburg, and by this court in Teasdale and Obin. On remand, Davis should be allowed the opportunity to submit affidavits or evidence that she believed that she had a claim for relief under section 1983 and that her claims were conceivably of merit. We note that Davis was denied this opportunity due to the district court's dismissal of her action prior to trial and was most likely discouraged from filing a reply to the defendants' second motion for summary judgment by the district court's decision to reset the case for trial only a few days after the defendants filed the motion.
 
 
 28
 C. Davis' Award of Attorney's Fees Against Judge Graham
 
 
 29
 In her final argument, Davis seeks to increase her attorney's fee award in her successful suit against Judge Graham. Although Davis' counsel requested $18,339.75 (87.75 hours X $95.00 per hour by a 2.2 multiplier), the district court awarded only $460.00. The court reduced the hourly rate claimed to $60.00 an hour upon a determination that this was the ordinary fee for similar work in the relevant community of Cape Girardeau, Missouri. The court furthermore determined that Davis failed to raise the argument upon which she prevailed until relatively late in the litigation--in her motion for summary judgment--and that the prevailing issue was only one argument out of the two raised in the motion. Thus, the court's fee award was based upon three out of the six hours claimed for preparation of the summary judgment motion, an additional three hours for time spent responding to motions subsequent to the filing of the summary judgment motion, and $100.00 in filing fees and miscellaneous expenses.
 
 
 30
 In Hensley v. Eckerhart, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the Supreme Court wrestled with the often complex issue of awarding fees for legal preparation where the party prevailed on only one or some of the issues raised. The Court distinguished between cases where the issue or issues upon which the party prevailed are easily separated from those upon which the party had no success and those cases where the two are not easily differentiated. Regarding the former, the Court said,
 
 
 31
 In such a suit, even where the claims are brought against the same defendants--often an institution and its officers, as in this case--counsel's work on one claim will be unrelated to his work on another claim. Accordingly, work on an unsuccessful claim cannot be deemed to have been "expended in pursuit of the ultimate result achieved."
 
 
 32
 Id. at 434-35, 103 S.Ct. at 1939-40 (citation omitted). Regarding the latter, the Court stated,
 
 
 33
 In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.
 
 
 34
 Id. at 435, 103 S.Ct. at 1940.
 
 
 35
 We believe that this case fits the latter description of cases where the issues are not so easily untangled. Although it is certainly true that the exact argument upon which Davis prevailed was not introduced prior to her summary judgment motion, Davis' claim for relief involved a common core of facts, i.e., Judge Graham's decision to incarcerate Davis for nonpayment of a fine without first holding a hearing on her indigency. Furthermore, Davis at all times contended that this incarceration violated her constitutional rights and thus she was entitled to relief under section 1983.
 
 
 36
 As to the reasonable hourly rate for these services, we note that while the district court awarded Davis' counsel $65.00 per hour, it awarded two of the three attorneys involved in Officers Grant and Smith's defense $75.00 per hour. In view of this discrepancy, we believe that the fee award should be based upon $75.00 per hour.
 
 
 37
 Thus, we remand this issue for the district court's determination, in light of Hensley, of the appropriate number of hours for which Davis should be awarded attorney's fees and for entry of a fee award based upon that number of hours times the reasonable hourly rate of $75.00.
 
 III. CONCLUSION
 
 38
 Accordingly, the district court's grant of summary judgment is hereby affirmed. The district court's award of attorney's fees to Officers Smith and Grant is hereby remanded to the district court for reconsideration. The district court's award of attorney's fees to Davis is also remanded so that the court may institute a new fee award based upon an appropriate number of hours at the reasonable hourly rate of $75.00 per hour.
 
 
 
 [1]
 The summary judgment order against Judge Graham (entered after Davis had completed her prison sentence) included an injunction requiring him to hold hearings to determine indigency of a defendant before ordering imprisonment for failure to pay a fine and assessed attorney's fees of $460.00. Judge Graham initially appealed that judgment but has now withdrawn the appeal
 
 
 [2]
 We recognize a string of authority, mostly from the Fifth Circuit, holding to the contrary, i.e., that a significant delay between the time a motion for summary judgment is filed and the court's ultimate disposition of the motion violates Rule 56(c). See Capital Films Corp. v. Charles Fries Productions, Inc., 628 F.2d 387 (5th Cir.1980); Kilbort v. Hampton, 538 F.2d 90 (5th Cir.1976); Enochs v. Sisson, 301 F.2d 125 (5th Cir.1962). In all three cases, as in the present case, the court granted the summary judgment motion months after it was filed. The court held in each case that, where the respondent to a motion for summary judgment does not receive notice that the motion will be heard and taken under advisement as of a certain day, the respondent is deprived of the safeguards guaranteed by Rule 56(c). In two other cases, the courts held that lack of notice of a court's intent to consider a motion for summary judgment would constitute reversible error save the existence of local district court rules that put the respondent on constructive notice. See Daniels v. Morris, 746 F.2d 271 (5th Cir.1984) and Moore v. Florida, 703 F.2d 516 (11th Cir.1983). We note that the United States District Court for the Eastern District of Missouri does not appear to have a rule similar to the district court rules cited in Daniels and Moore
 Nevertheless, this line of authority does not affect our holding that the defendants' motion for summary judgment complied with Rule 56(c). Here, Davis does not argue, as did the appellants in the above cases, that the grant of summary judgment should be vacated because she failed to receive notice of the district court's intent to rule on the motion. Rather, she argues that the district court rendered the defendants' motion a nullity by denying it on March 10, 1986. As stated above, the court made no such ruling. Furthermore, we do not believe the holding in the above cases is appropriate where Davis does not claim that she failed to receive notice of the defendants' motion for summary judgment. See Grigoleit Co. v. United Rubber, Cork, Linoleum and Plastic Workers of America, Local No. 270, 769 F.2d 434, 437-38 (7th Cir.1985).
 
 
 [3]
 The Supreme Court has held that a federal court in a section 1983 claim must give to a lower state court judgment the same preclusive effect as would be given by a higher state court. See Migra v. Warren City School Dist. Bd. of Educ., 465 U.S. 75, 80-81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984); Allen v. McCurry, 449 U.S. 90, 102, 101 S.Ct. 411, 419, 66 L.Ed.2d 308 (1980). Under the Missouri test for collateral estoppel (see Retirement Bd. of Police Retirement Sys. of Kansas City v. Noel, 652 S.W.2d 874, 878 (Mo.App.1983); Oates v. Safeco Ins. Co. of America, 583 S.W.2d 713, 719 (Mo.1979) (en banc)), Davis' claim is not barred. The issue of her guilt or innocence of the charge, adjudicated at her trial, is not "identical" to her claim of unlawful arrest by reason of absence of probable cause. Furthermore, as a pro se litigant before the state court, we do not believe that she had a "full and fair opportunity to litigate the issue in the prior suit." See Noel, 652 S.W.2d at 878; Oates, 583 S.W.2d at 719